# EXHIBIT 2

Electronically FILED by Superior Court of California, County of Riverside on 10/08/2024 02:33 PM
Case Number CVRI2405002 0000104486130 - Jason B. Galkin, Executive Officer/Clerk of the Court By Amia Brown, Clerk

Michael W. Carney, State Bar No. 241564
Lauren A. Welling, State Bar No. 291813
Sarah Kissel Meier, State Bar No. 305315
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
Fax: (310) 773-5573
E-mail: *MCarney@sssfirm.com*
*LWelling@sssfirm.com*
*Skmeier@sssfirm.com*

Attorneys for Plaintiff Jane Roe JW 142

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

Jane Roe JW 142,

Plaintiff,

v.

THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; THE MENIFEE CALIFORNIA STAKE, also known as THE CHURCH OFJESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 4 to 100,

Inclusive,

Defendants.

Case No.: CVRI2405002

**COMPLAINT FOR DAMAGES**

1. **NEGLIGENCE**
2. **NEGLIGENT SUPERVISION OF A MINOR**
3. **SEXUAL ABUSE OF A MINOR**
4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**
5. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**
6. **BREACH OF MANDATORY DUTY**
7. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**[DEMAND FOR JURY TRIAL]**

Plaintiff, Jane Roe JW 142, of and for her causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1. This case involves egregious sexual and emotional abuse of a child.

2. In 2006 while only 16 years old, and following a multiyear campaign of predatory grooming, Plaintiff Jane Roe JW 142 was isolated, locked in a vehicle, threatened, and sexually assaulted while being restrained by one of the highest-ranking, adult male religious leaders in Defendants' Menifee, California Church. Upon learning of the abuse, Defendants put into motion a concerted effort to conceal the abuse of Plaintiff Jane Roe JW 142 and several other young female members by this same adult Church leader, exponentially exacerbating the already overwhelming harm caused her by Defendants.

## PARTIES

3. Plaintiff Jane Roe JW 142 ("**Plaintiff**") is an adult female under the age of forty at the time of this filing and a resident of the County of Riverside, State of California. As a victim of childhood sexual assault, as defined by section 340.1 of the Code of Civil Procedure, the name "Jane Roe JW 142" is not the Plaintiff's actual name, but is a fictitious name utilized to protect her privacy. Jane Roe JW 142 is entitled to protect her identity in this public court filing by not disclosing her name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by the perpetrator, Todd Mitchell Edwards.

4. Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning her identity and making her identity public, as such a public disclosure would further harm Plaintiff and her family.

5. Defendant The Church of Jesus Christ of Latter-day Saints (hereinafter "Church"), is and was at all relevant times herein mentioned, the religious entity, located at Menifee, California, through which Todd Mitchell Edwards held and used his position within the "Melchizedek Priesthood" to groom and sexually abuse Plaintiff. The Church of Jesus Christ of Latter-day Saints

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah. The Church operates wards, meetinghouses, congregations, temples and other houses of worship within the State of California. The Church does business with and conducts continuous and systemic activities in California. The Church of Jesus Christ of Latter-day Saints' principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The Church is registered to do business in California, and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of The Church. The divisions of The Church are the wards, stakes and areas. The Church of Jesus Christ of Latter-day Saints is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

6. Defendant The Temple Corporation of The Church of Jesus Christ of Latter-day Saints (hereinafter "Temple Corporation") is and was at all relevant times herein mentioned, a religious entity and subsidiary of the Church. The Temple Corporation is a nonprofit corporation duly organized, and operating pursuant to the laws of, the State of Utah. The Temple Corporation operates properties, temples and other houses of worship within the State of California. The Temple Corporation does business with and conducts continuous and systemic activities in California. The Temple Corporation's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The Temple Corporation is registered to do business in California, and operates, maintains and manages the Church's properties at the direction of and under the control of the Church. The Temple Corporation, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

7. The Menifee California Stake, is and was at all relevant times herein mentioned, a religious entity and subsidiary of The Church. The Menifee California Stake is a religious entity of unknown form duly organized, and operating pursuant to the laws of, the State of California. The Menifee California Stake does business with and conducts continuous and systemic activities in California. The Menifee California Stake's principal place of business is 29725 Bradley Road, Sun City, CA 92586. The Menifee California Stake is registered to do business in California, and operates, maintains and manages The Church's congregations and wards within Riverside County at the direction

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

of and under the control of The Church. The Menifee California Stake has, or as alleged herein had, responsibility for some or all operations in Riverside County, California. The Menifee California Stake reports directly to The Church. The Menifee California Stake, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8. The Defendants each assumed responsibility for the wellbeing of their members, whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members. As a result, they each had a special relationship with members of the congregation, including the minor Plaintiff. This relationship gave rise to a duty to protect members of the congregation, including the minor Plaintiff from a foreseeable risk of harm. At all relevant times, the Defendants assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members from the harm they might inflict.

9. Defendants' income comes from member tithes which are turned over to the Church for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes and areas. The Church does not provide information about their finances to their members or the public. Upon information and belief, the Church receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, The Church of Jesus Christ of Latter-day Saints owns financial assets and real estate in excess of 200 billion dollars.

10. The true name[s] and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 4 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

11. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

12. All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

13. Todd Mitchell Edwards was an employee, agent, servant, member, and/or volunteer of Defendants when he sexually assaulted the Plaintiff—then a minor.

14. During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants supervised and exercised control over Plaintiff's abuser.

15. Each Defendant is responsible, in some manner, for the events and happenings herein

referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

16. Except as otherwise noted, a reference to "Defendants" in this Complaint shall include The Church, The Temple Corporation, The Menifee California Stake, and DOES 4 through 100, inclusive.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of Riverside and the State of California.

18. The subject incidents upon which this Complaint are based occurred in the City of Menifee, within the County of Riverside, in the State of California. As such, venue is proper in the Riverside County Superior Court of California.

## FACTUAL ALLEGATIONS
## (Common to All Causes of Action)

19. The Church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

20. The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

21. Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

22. The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng

[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)



SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

23. Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

24. Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

25. Plaintiff Jane Roe JW 142 was a minor child and a member of Defendants' Church, in Menifee, California. Todd Mitchell Edwards was a member of the "Melchizedek Priesthood" within the Church and used his position of authority therein to groom and to sexually abuse Plaintiff. Abuse by Todd Mitchell Edwards occurred when Plaintiff was just 16 years old. Intent on manipulating Plaintiff's emotions and taking advantage of her innocence, so that he eventually could sexually abuse her, Todd Mitchell Edwards exploited Plaintiff's fragile mental state to cause her extreme fear, anxiety, and confusion; coercing and manipulating Plaintiff in order to gain further power and control over her. All tactics employed for abuse purposes occurred during the most vulnerable time of Plaintiff's life.

26. Eventually, Todd Mitchell Edwards initiated extreme sexual abuse of Plaintiff. Plaintiff endured a humiliating event of child molestation by Todd Mitchell Edwards, a figure of religious authority, whom Plaintiff had been taught to trust with her life and well-being and had never been given the choice but to trust.

27. Plaintiff is informed and believes and thereupon alleges, that, at all times herein

---

[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] [LDS] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

mentioned, Defendants knew Todd Mitchell Edwards was using his position of authority within The Church of Jesus Christ of Latter-day Saints to groom and to sexually abuse one of its minor members, Plaintiff, and Defendants failed to take reasonable steps to protect her.

28. Todd Mitchell Edwards engaged in underclothes fondling and digital penetration of Plaintiff pursuant to his position of power and authority within Defendants' Church.

29. In 2006, the abuse took place within Todd Mitchell Edwards's vehicle.

30. Prior to the sexual assault of Plaintiff in 2006, and at all times thereafter, Defendants, bishops and/or counselors knew, should have known, reasonably suspected, or were otherwise on notice of the verbal, physical and sexual abuse by Todd Mitchell Edwards. Defendants knew that Todd Mitchell Edwards, by virtue of his position in the "Melchizedek Priesthood," exercised a heightened level of power and authority over other members of the congregation, and even more so with children. Appropriate measures and safeguards should have been in place to either monitor or prevent otherwise unsupervised interactions between Edwards and youth members. Because this was not the case, Edwards was enabled to groom Plaintiff and gain her trust over a prolonged period between when they met in 2004, and when the abuse took place in 2006. Edwards was able to gain further access to Plaintiff by virtue of her employment with Edwards's wife. Edwards seized upon information he obtained regarding Plaintiff's home life, namely her parents' divorce. Edwards used such information to draw yet closer to Plaintiff. Meanwhile, he was also ingratiating himself with Plaintiff's family, befriending them and normalizing his one-on-one time with Plaintiff. Despite the unsettling nature of Edwards's relationship with Plaintiff, Defendants allowed their religious leader to continue seeking out Plaintiff with the ultimate goal of isolating and abusing her.

31. Having failed to act upon their notice of imminent harm to Plaintiff by preventing or stopping the sexual abuse which followed, Defendants then acted to conceal their knowledge of the known sexual assault. Plaintiff disclosed the abuse to the Stake President Robert Wilson, who rather than reporting the known sexual assault to law enforcement, offered Plaintiff counseling through the Church. When the Stake President Wilson then held a meeting with Plaintiff's parents, he reiterated that the Defendants would conduct their own investigation, and later determine if law

enforcement should be notified. The police were never notified by Defendants, even as another of Edwards's victims came forward to the Stake President Wilson to disclose her own abuse. Edwards would go on to confess his sexual abuse of this other victim to the Stake President Wilson, who still attempted to hinder the discovery of Edwards's abuse of Plaintiff and others by law enforcement.

32. Similarly, Plaintiff came to know of an apology letter Edwards had written her, though it was never provided to her. After a member of Plaintiff's family alerted police to Defendants' cover-up of Edwards's misconduct, the proper authorities became involved in the matter. It was determined that yet another third minor female in the Church had been sexually abused by Edwards, and several others reported inappropriate and harassing behavior by Edwards. When Stake President Wilson was contacted by police, he refused to answer any questions and directed them to Defendants' lawyer through Kirton McConkie. Kirton McConkie erroneously claimed clergy privilege, further hindering the investigation. While Defendants continued to conceal the actions of the serial predator they had empowered and let loose on their youth community, Edwards himself would acknowledge and, for all intents and purposes, confess the sexual abuse of Plaintiff during a controlled call with police listening in. Even as Edwards was arrested for the sexual abuse of Plaintiff and others, Defendants continued to hide and deflect as much as possible with Plaintiff, her family, and the police – all to the further detriment of Plaintiff and others. Defendants thus had notice of the impending sexual assault of Plaintiff. When they allowed the abuse to occur, Defendants then took their knowledge of what had taken place and initiated a full-court press to keep it hidden. In so doing, Defendants have taken the harm caused by their failure to heed the notice afforded them in the first place, and increased it manifold in the years following their confirmation of the abuse.

33. Plaintiff initially met Todd Mitchell Edwards in approximately 2004 while attending one of Defendants' wards in Menifee, California. Edwards was then a member of the "Melchizedek Priesthood," a position of religious authority within the Church. He was also the leader of the young men's group, and his own daughter was part of the young women's group, along with Plaintiff. As such, Edwards held additional influence and authority over the children in the congregation, by

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

virtue of both his calling and his familiarity with several of the female youth members. With Plaintiff in particular, Edwards had yet more access pursuant to Plaintiff's employment with Edwards's wife. This also provided Edwards personal information about Plaintiff which is believed to have been passed on to him through his wife. Todd Mitchell Edwards further used the approximately two years between meeting Plaintiff and sexually assaulting her to ingratiate himself with her family. He effectively utilized the cover of his leadership position in the Church to disarm Plaintiff's parents and gain their trust, just as he had done with Plaintiff. This culminated in November of 2006 when Edwards, under the pretense of bringing Plaintiff over to his home for dinner, picked up Plaintiff in his vehicle, alone. Using the information he had obtained regarding Plaintiff's parents' divorce, Edwards was able to distract Plaintiff from where he was driving while she relayed how she felt about her situation at home. When Edwards eventually parked, Plaintiff realized they were in a field away from any lights or houses. She told Edwards she wanted to get to his house for the dinner, to which Edwards replied that he wanted to talk first. It was then that Edwards began caressing Plaintiff's back and them moving to under her shirt. Feeling extremely uncomfortable, Plaintiff reiterated that she wanted to go to his home, but again Edwards deflected. Edwards then attempted to fondle Plaintiff's breasts under her shirt, to which Plaintiff pulled away and attempted to exit the vehicle. Edwards then locked the car doors, threatening Plaintiff that no one knew where she was, nor was anyone around to hear her should she scream. He ordered her to remain where she was, and made her to lie down across the front seats of his vehicle with her head on his lap. Plaintiff begged Edwards to take her home but he refused. He ordered her to close her eyes, which she did after Edwards repeated the command a second, more stern tone. Edwards then proceed to unbutton her pants, and remove her undergarments, and forcibly digitally penetrate her. Plaintiff begged Edwards to stop his assault and to take her home, she even tried to stop him by getting up, however Edwards responded to her attempts by forcibly holding her down and continuing his assault. Once he concluded his attack, rather than driving Plaintiff to his home for dinner as intended, Edwards took Plaintiff back to her own home.

34. Each Stake creates and maintains meticulous sets of membership records which are

reviewed and controlled by The Church of Jesus Christ of Latter-day Saints. Membership records are the Church's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the Church.

35. Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."*** All annotations placed on a member's record are approved by the First Presidency.

36. Defendants maintain a pattern and practice of concealing abuse from the authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

37. The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse." In conjunction with this doctrine, Utah's Supreme Court has characterized the Helpline as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

38. In reality, the Church primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah. Rather than notifying law enforcement or other government authorities when Bishops and other Church clergy members call the Helpline regarding sexual abuse within the Church, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

39. Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

40. In another sexual abuse-related civil lawsuit against the Church and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[6]

41. In other words, the Church implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for Kirton McConkie attorneys to snuff out complaints and protect the Church and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

42. Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as a "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allowed Todd Mitchell Edwards to continue completely unhindered and protected, even in his predatory conduct. Defendants, their agents, and employees, including bishops,

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

[6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

counselors, or personnel mentioned herein, DOES 4- 100, and each of them, acted to protect the heinous and unforgiveable acts of Todd Mitchell Edwards, and in such action taken against Plaintiff's innocence and vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

43. At all times herein mentioned, Defendants and each of them (1) knew how conducive the Church premises were to sexual abuse and sexual predators, and that sexual predators, such as Todd Mitchell Edwards in particular, had apparent, if not actual, authority within the Church community and on Church premises while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker); (2) knew that members of the Church priesthood and specifically, Todd Mitchell Edwards, systematically and continuously leveraged any and all authority which the title and association with the Church, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew that leaving Plaintiff or any youth members of the Church under the supervision of Todd Mitchell Edwards or within his presence and otherwise unattended, presented a risk of imminent harm to those youth members and did harm at least one of them, this Plaintiff.

44. Defendants provided direct access to a large youth community wherein a danger to the community, Todd Mitchell Edwards, wielded power over the Plaintiff.

45. Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that Perpetrator was isolating and taking minor children, including Plaintiff, and committing inappropriate behavior with minor children. Therefore, Defendants knew or should have suspected that Perpetrator was engaging in inappropriate behavior and conduct with minor children, including Plaintiff, at DOE 1's ward and congregation and failed to take any remedial action prior to his sexual assault of Plaintiff.

46. Prior to, during, and after Perpetrator's sexual assault and/or sexual abuse, and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on

notice, that Perpetrator's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

47. Defendants were made aware, and confirmed that Perpetrator had inappropriately touched, sexually assaulted and/or sexually abused, and molested other children, including Plaintiff.

48. Notwithstanding their confirmed actual knowledge of Perpetrator's sexual assault and/or sexual abuse, and molestation of Plaintiff and other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by Perpetrator, limit or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

49. Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Perpetrator.

50. As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Perpetrator's unlawful and inappropriate misconduct, Perpetrator was able to continue his sexual assaults and/or sexual abuse, and molestation of Plaintiff.

51. Defendants acting through their representative, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by Perpetrator because, inter alia, Defendants:

a) Negligently hired, supervised, retained, monitored, and/or investigated Todd Mitchell Edwards.

b) Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

c) Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

enforcement.

52. Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made Perpetrator's conduct harder to detect including, but not limited to:

a) Permitting Perpetrator to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

b) Permitting Perpetrator continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Perpetrator's misconduct that created a risk of childhood sexual assault.

c) Failing to inform or concealing from law enforcement officials of the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator had, and/or was, engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d) Holding out and affirming Perpetrator to Plaintiff and Plaintiff's parent, other children and their parents, and to the community as being in good standing and trustworthy.

e) Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including Perpetrator with minor children.

f) Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

53. Defendants, and each of them, negligently, intentionally, maliciously and/or willfully

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

refused to, and/or did not act reasonably to stop, inhibit, and/or report Perpetrator to law enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation of Plaintiff, thereby allowing the assault to occur and to continue unabated.

54. Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

55. Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

56. The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(Plaintiff Against All Defendants and DOES 4-100)**

57. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

58. Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of the perpetrator by way of the special relationship existing between those individuals.

59. Defendants knew or should have known of Todd Mitchell Edwards' misconduct and inappropriate sexual behavior directed by Todd Mitchell Edwards to minor Plaintiff Jane Roe JW 142

60. Despite having knowledge of the misconduct, Defendants failed to take any

preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff Jane Roe JW 142 or her parents regarding the abuse, despite having a legal duty to do so.

61. As a result of Defendants' negligence, Plaintiff Jane Roe JW 142 was sexually abused by Todd Mitchell Edwards.

62. Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, she would not have been subjected to the misconduct aimed against her.

63. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

## SECOND CAUSE OF ACTION

## NEGLIGENT SUPERVISION OF A MINOR

## (Plaintiff Against All Defendants and DOES 4-100)

64. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

65. Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, Todd Mitchell Edwards, on Defendants' premises. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; like Todd Mitchell Edwards, a figure of authority for the Defendants' church community shared with Plaintiff.

66. Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that Todd Mitchell Edwards was

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

engaged in repeated inappropriate and harassing relationships with Plaintiff and exhibited inappropriate conduct around other minors; allowing Plaintiff to spend unsupervised one-on-one time with Todd Mitchell Edwards; ignoring and turning a blind-eye to Plaintiff's whereabouts and wellbeing, so that she could be with Todd Mitchell Edwards; and allowing Todd Mitchell Edwards to repeatedly sexually harass and abuse the minor Plaintiff on and off the Church premises.

67. Had Defendants adequately and properly supervised, monitored, and protected its students, Plaintiff would not have been harmed.

68. Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

69. Had Defendants, each of them, adequately performed their duty and responsibility, then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment she endured, and which still impacts her life today, as alleged herein.

70. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## THIRD CAUSE OF ACTION

## SEXUAL ABUSE OF A MINOR

## (Plaintiff Against All Defendants and DOES 4-100)

71. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

72. While Plaintiff was a member at Defendants' Church, Todd Mitchell Edwards took advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given her age.

73. Defendants ratified Todd Mitchell Edwards' sexual abuse of Plaintiff because

Defendants had knowledge that he had harassed and potentially harmed other community youth members, yet they intentionally turned a blind-eye and still allowed him to be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing Todd Mitchell Edwards to gain access to and ultimately manipulate and sexually abuse Plaintiff. Defendants did not discipline, denounce, or discharge Todd Mitchell Edwards; as such, they instead accepted and thus ratified his conduct.

74. At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with The Church of Jesus Christ of Latter-day Saints when they ratified Todd Mitchell Edwards' criminal conduct and adopted it as if it were their own conduct.

75. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

76. In committing the acts described herein, the conduct of Todd Mitchell Edwards, Defendants, their agents, and employees, and DOES 4-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, The Church, The Temple Corporation and The Menifee California Stake.

## FOURTH CAUSE OF ACTION

## NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE

**(Plaintiff Against All Defendants and DOES 4-100)**

77. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

78. Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 4-100, had the responsibility and mandatory duty to adequately and properly investigate,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

79. During the time Plaintiff was being sexually abused by Todd Mitchell Edwards, Defendants knew of complaints of serious misconduct made against Todd Mitchell Edwards, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Todd Mitchell Edwards.

80. Instead, Defendants blamed, threatened, and attacked Plaintiff for compromising Todd Mitchell Edwards' position in the Church and authority within the Church community.

81. Defendants knew or should have known that Todd Mitchell Edwards engaged in repeated misconduct against female members of the community, one being Plaintiff.

82. Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise Todd Mitchell Edwards on Defendants' premises.

83. Had Defendants, each of them, properly investigated, supervised, trained, and monitored Todd Mitchell Edwards' conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed Todd Mitchell Edwards to continue, unhindered, with his predatory conduct directed towards underage members of the Church community, including Plaintiff.

84. Defendants negligently hired, supervised, retained, monitored, and otherwise employed Todd Mitchell Edwards and negligently failed to ensure the safety of a minor community member in the Church, Plaintiff, who was entrusted to Defendants' custody, care and control.

85. Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the Todd Mitchell Edwards.

86. Had Defendants, each of them, performed their mandatory duties and responsibilities

to monitor, supervise, and/or investigate their 'Elders' and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon her.

87. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE**

**(Plaintiff Against All Defendants and DOES 4-100)**

88. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

89. Defendants, their agents and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, and DOES 4-100, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

90. Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn her of known and knowable dangers posed by its faculty and staff, including Todd Mitchell Edwards; by failing to inform and educate her on its sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train its faculty and staff, including Todd Mitchell Edwards, on Defendants' sexual harassment policies.

91. As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 4-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by Todd Mitchell Edwards.

92. Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

93. As a direct and legal result of this negligent conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SIXTH CAUSE OF ACTION

## BREACH OF MANDATORY DUTY:

## FAILURE TO REPORT SUSPECTED CHILD ABUSE

**(Plaintiff Against All Defendants and DOES 4-100)**

94. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

95. Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

96. Defendants, acting through their employees, had, or should have had a reasonable suspicion that Todd Mitchell Edwards was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

97. Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

98. By failing to report suspected child abuse, Defendants allowed Todd Mitchell Edwards to continue, unhindered, in his abuse of minor children, including Plaintiff.

99. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Roe JW 142 prays for judgment against Defendants

THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; a THE MENIFEE CALIFORNIA STAKE, also known as THE CHURCH OFJESUS CHRIST OF LATTER-DAY SAINTS, and DOES 4 through 100, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;
2. Attorney's fees;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

Dated: September 6, 2024

**SLATER SLATER SCHULMAN LLP**

By: ______________________________

Michael W. Carney
Lauren A. Welling
Sarah Kissel Meier
Attorneys for Plaintiff

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573