# EXHIBIT 3

Electronically FILED by Superior Court of California, County of Riverside on 09/04/2024 07:33 AM
Case Number CVRI2404892 0000104007935 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joanne Bishop, Clerk

Michael W. Carney, State Bar No. 241564
Lauren A. Welling, State Bar No. 291813
Sarah Kissel Meier, State Bar No. 305315
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
Fax: (310) 773-5573
E-mail: *MCarney@sssfirm.com*
*LWelling@sssfirm.com*
*Skmeier@sssfirm.com*

Attorneys for Plaintiff Jane Roe EO 5

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

Jane Roe EO 5,

Plaintiff,

v.

THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; THE HEMET CALIFORNIA STAKE also known as THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 4 to 100,

Inclusive,

Defendants.

Case No.: CVRI2404892

**COMPLAINT FOR DAMAGES**

1. **NEGLIGENCE**
2. **NEGLIGENT SUPERVISION OF A MINOR**
3. **SEXUAL ABUSE OF A MINOR**
4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**
5. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**
6. **BREACH OF MANDATORY DUTY**

**[DEMAND FOR JURY TRIAL]**

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Plaintiff, Jane Roe EO 5, of and for her causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1. This case involves egregious sexual and emotional abuse of a child.

2. Between 2010 and 2011, minor Plaintiff Jane Roe EO 5 was repeatedly sexually abused and raped by an adult member of Defendants' Church. The abuse, including that in relation to Defendants' activities or on Defendants' premises, was allowed to continue despite Defendants' knowledge of the abuser's relationship with minor Plaintiff, including multiple disclosures to the ward's "Bishop."

## PARTIES

3. Plaintiff Jane Roe EO 5 ("**Plaintiff**") is an adult female under the age of forty at the time of this filing and a resident of the County of Riverside, State of California. As a victim of childhood sexual assault, as defined by section 340.1 of the Code of Civil Procedure, the name "Jane Roe EO 5" is not the Plaintiff's actual name, but is a fictitious name utilized to protect her privacy. Jane Roe EO 5 is entitled to protect her identity in this public court filing by not disclosing her name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by the Perpetrator, Thomas Justin Powell.

4. Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning her identity and making her identity public, as such a public disclosure would further harm Plaintiff and her family.

5. Defendant The Church of Jesus Christ of Latter-day Saints (hereinafter "Church"), is and was at all relevant times herein mentioned, the religious entity, located at Hemet, California,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

through which Thomas Justin Powell held and used his position as an adult member of Defendants' Church to groom and sexually abuse Plaintiff. The Church of Jesus Christ of Latter-day Saints is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah. The Church operates wards, meetinghouses, congregations, temples and other houses of worship within the State of California. The Church does business with and conducts continuous and systemic activities in California. The Church of Jesus Christ of Latter-day Saints' principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The Church is registered to do business in California, and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of The Church. The divisions of the The Church are the wards, stakes and areas. The Church of Jesus Christ of Latter-day Saints is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

6. Defendant The Temple Corporation of The Church of Jesus Christ of Latter-day Saints (hereinafter "Temple Corporation") is and was at all relevant times herein mentioned, a religious entity and subsidiary of the Church. The Temple Corporation is a nonprofit corporation duly organized, and operating pursuant to the laws of, the State of Utah. The Temple Corporation operates properties, temples and other houses of worship within the State of California. The Temple Corporation does business with and conducts continuous and systemic activities in California. The Temple Corporation's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The Temple Corporation is registered to do business in California, and operates, maintains and manages the Church's properties at the direction of and under the control of the Church. The Temple Corporation, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

7. The Hemet California Stake, is and was at all relevant times herein mentioned, a

religious entity and subsidiary of the Church. The Hemet California Stake, also known as The Church of Jesus Christ of Latter-day Saints, is a religious entity of unknown form duly organized, and operating pursuant to the laws of, the State of California. The Hemet California Stake does business with and conducts continuous and systemic activities in California. The Hemet California Stake's principal place of business is 425 North Kirby Street, Hemet, CA 92545. The Hemet California Stake is registered to do business in California, and operates, maintains and manages The Church's congregations and wards within Riverside County at the direction of and under the control of the Church. The Hemet California Stake has, or as alleged herein had, responsibility for some or all operations in Riverside County, California. The Hemet California Stake reports directly to The Church. The Hemet California Stake, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8. The Defendants each assumed responsibility for the wellbeing of their members, whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members. As a result, they each had a special relationship with members of the congregation, including the minor Plaintiff. This relationship gave rise to a duty to protect members of the congregation, including the minor Plaintiff from a foreseeable risk of harm. At all relevant times, the Defendants assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members from the harm they might inflict.

9. Defendants' income comes from member tithes which are turned over to the Church

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes and areas. The Church does not provide information about their finances to their members or the public. Upon information and belief, the Church receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, The Church of Jesus Christ of Latter-day Saints owns financial assets and real estate in excess of 200 billion dollars.

10. The true name[s] and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 4 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

11. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

12. All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers,

directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

13. Thomas Justin Powell was an employee, agent, servant, member, and/or volunteer of Defendants when he sexually assaulted the Plaintiff—then a minor.

14. During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants supervised and exercised control over Plaintiff's abuser.

15. Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

16. Except as otherwise noted, a reference to "Defendants" in this Complaint shall include The Church, The Temple Corporation, The Hemet California Stake, and DOES 4 through 100, inclusive.

**JURISDICTION AND VENUE**

17. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of Riverside and the State of California.

18. The subject incidents upon which this Complaint are based occurred in the Cities of Hemet and San Jacinto, within the County of Riverside, in the State of California. As such, venue

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

is proper in the Riverside County Superior Court of California.

**FACTUAL ALLEGATIONS**
**(Common to All Causes of Action)**

19. The Church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

20. The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

21. Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

22. The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

23. Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng

[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

24. Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

25. Plaintiff Jane Roe EO 5 was a minor child and a member of Defendants' Church, in Hemet, and later San Jacinto, California. Thomas Justin Powell was an adult member of the Church, and his parents a "First Counselor" and "Young Women's leader." Powell used his position of authority therein to groom and to sexually abuse Plaintiff. Abuse by Thomas Justin Powell began when Plaintiff was just 14 years old. Intent on manipulating Plaintiff's emotions and taking advantage of her innocence, so that he eventually could sexually abuse her, Thomas Justin Powell exploited Plaintiff's fragile mental state to cause her extreme fear, anxiety, and confusion; coercing and manipulating Plaintiff in order to gain further power and control over her. All tactics employed for abuse purposes occurred during the most vulnerable time of Plaintiff's life.

26. Eventually, Thomas Justin Powell initiated extreme sexual abuse of Plaintiff. Plaintiff endured ongoing, humiliating events of child molestation by Thomas Justin Powell, a figure of religious authority, whom Plaintiff had been taught to trust with her life and well-being and had never been given the choice but to trust.

27. Plaintiff is informed and believes and thereupon alleges, that, at all times herein mentioned, Defendants knew Thomas Justin Powell was using his position of authority within The

---

[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] [LDS] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Church of Jesus Christ of Latter-day Saints to groom and to sexually abuse one of its minor members, Plaintiff, and Defendants failed to take reasonable steps to protect her.

28. Thomas Justin Powell, engaged in fondling, groping, forced oral intercourse, and vaginal rape of Plaintiff at various locations, including at Defendants' controlled events and meetings and on Defendants' properties.

29. From 2010 to 2011, the abuse took place within the kitchen and other empty rooms on Defendants' premises in Hemet, and in the parking lot on Defendants' premises in San Jacinto. Further abuse took place in Thomas Justin Powell's home and vehicle, including in relation to Defendants' youth meetings and activities.

30. Before the first instance of abuse in 2010, and at all times thereafter, Defendants, bishops and/or counselors knew, should have known, reasonably suspected, or were otherwise on notice of the ongoing verbal, physical and sexual abuse by Thomas Justin Powell. The adult Powell's relationship with the 14-year-old Plaintiff was not one that was concealed from the congregation, but rather was known and accepted. From their earliest interactions, Powell came to sit by Plaintiff during religious services, attended her baptism, and initiated conversation during various youth activities. Then-18-year-old Powell sat with Plaintiff during sacrament meetings, directing Plaintiff to massage his arms, shoulders, and hands. This proceeded to groping of Plaintiff's breasts and buttocks in the kitchen or other empty rooms of the meetinghouse in Hemet. Defendants, with full knowledge of Powell's illicit relationship with Plaintiff, failed to prohibit or report the misconduct, both on its face, and when Powell removed Plaintiff to isolated locations on their premises to sexually abuse her. Once Plaintiff had moved wards to San Jacinto the following year, and Powell to a nearby Young Single Adults ward, Powell began sneaking into youth Church functions to again gain access to Plaintiff. Though Powell was not allowed to attend these events for children, he was

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

neither reprimanded nor reported, even when caught. A second, even more extreme period of abuse would follow.

31. Having already ratified Powell's actions in 2010, and the stalking and continued grooming of Plaintiff after she moved, Defendants again turned a blind eye when Powell again resumed abusing Plaintiff. For much of 2011, Thomas Justin Powell fondled Plaintiff, forced her to perform oral sex, and raped her over her objections. The abuse was so extreme at times that Plaintiff suffered vaginal tearing and bleeding on multiple occasions. On two separate occasions during this second period of extreme sexual abuse, Plaintiff approached her ward's "Bishop" for guidance on how to repent. She informed him each time that her and a man in the congregation had broken the law of chastity. During the second such meeting, Plaintiff specifically named Powell as the man abusing her. Rather than immediately report the egregious sexual misconduct and abuse, let alone inquire further of Plaintiff, the "Bishop" told her how to repent and informed her that she would be disciplined. Nothing else was done, and upon learning of her desire to repent, Powell intensified his sexual abuse of Plaintiff. Thus, at all times Defendants had actual knowledge of Powell's ongoing abuse of Plaintiff. Incredibly, Defendants, their "Bishop," and the rest of their congregation accepted and ratified an 18- to 19-year-old man's relationship with a vulnerable, powerless female child member 4 years his junior and punished her after she disclosed the sexual abuse. As a matter of course, Defendants therefore knew or should have known of the ongoing childhood sexual assault perpetrated by Thomas Justin Powell. Even after Defendants had shamefully allowed the abuse to carry on through 2011, they ignored Plaintiff's direct disclosure of the abuse and enabled Powell to continue. The physical tearing and bleeding may now be over, but the emotional pain and suffering carried by Plaintiff as a result of Defendants' actions will likely never heal.

32. By 2010, Plaintiff was a vulnerable child being raised in foster care, where her foster

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

mother began bringing her and her siblings to Defendants' ward in Hemet, California. By the time Plaintiff was baptized, Thomas Justin Powell had approached Plaintiff and told her he had known of her through some of the missionaries in the ward. Powell's grooming of the Plaintiff continued from there, sitting next to her during religious services and interacting with her at various youth activities. Plaintiff, a 14-year-old child, and Powell, the adult son of the ward's "First Counselor" and "Young Women's President," initiated what was presented to the rest of the Church as a "relationship." Despite the innately impermissible nature of Powell "dating" the Plaintiff, he could be observed at sacrament meetings having Plaintiff rub and massage his body. Even more alarming were the multiple times over the next two months where Powell removed Plaintiff to an empty room, such as the kitchen, and groped her breasts and buttocks. Two months after the abuse began, Plaintiff informed Powell that she did not want to be around him any longer, having felt uncomfortable from the abuse, isolated from her friends, and her demeanor a shell of what it was like before the abuse began.

33. Plaintiff subsequently moved to the San Jacinto ward in early 2011, and Thomas Justin Powell to a nearby Young Single Adults ward. Nonetheless, Powell began stalking Plaintiff, showing up not only to her gym, but to various youth Church activities at Plaintiff's new ward. Despite being barred from such activities due to his age, Powell nonetheless appeared at "Mutuals" and Church dances, trying to convince Plaintiff to let him take her and her sister home. On some occasions, Powell was discovered trying to enter, but rather than reprimanding and investigating the encounters, Defendants allowed him to wait outside the event until it ended, and he could again access Plaintiff. Powell persisted in trying to reengage Plaintiff in their previous "relationship," despite and over her objections. Powell soon thereafter began sexually abusing Plaintiff in his vehicle. At least once a week from the early part of 2011 until October of that year, Powell would

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

park his vehicle, and force Plaintiff's head onto his penis. She was forced to perform oral intercourse until ejaculation. This quickly escalated to vaginal rape of Plaintiff, despite her repeated attempts to tell Powell she did not consent. The repeated rape left Plaintiff with regular bleeding, tearing, and scar tissue. Portions of this abuse additionally occurred in the parking lot of the San Jacinto ward. At a certain point Powell went so far as to bring an adult couple to his home to "educate" Plaintiff on sexual intercourse and explain to her that pain and bleeding were normal. Plaintiff on two separate occasions during 2011 went to the ward's "Bishop" to inform him that she had broken the law of chastity and wanted to repent. However, the "Bishop" did not ask any follow-up questions nor was any investigation launched. Instead, Plaintiff was left unsupported, having already told Powell she wanted to repent and no longer would comply with his sexual demands. In response, Thomas Justin Powell only intensified his abuse, becoming increasingly rough and aggressive. Not feeling comfortable going to anyone but the "Bishop," as she had been taught to do, Plaintiff again met with the "Bishop," who this time inquired into the man involved. Inexplicably, Defendants' response to the actual knowledge of Plaintiff's rape by an adult member was to punish Plaintiff by disallowing her from taking sacrament or praying out loud in Church. In October, Plaintiff again mustered up the courage to flee from Powell, though he would continue stalking her until summer of 2012. It was not until Powell had to prepare for his missionary trip that Plaintiff fully escaped her abuser. That Powell was able continue on, unfettered by the Church or the law, and was able to go on a mission, his standing in the Church fully intact, mirrors Defendants' disturbing and unlawful approach to Powell's abuse of Plaintiff – namely, the complete ratification and approval of his actions.

34. Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by The Church of Jesus Christ of Latter-day Saints. Membership records

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

are the Church's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the Church.

35. Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."*** All annotations placed on a member's record are approved by the First Presidency.

36. Defendants maintain a pattern and practice of concealing abuse from the authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

37. The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse." In conjunction with this doctrine, Utah's Supreme Court has characterized the Helpline as "a 1-800 number that bishops and other Church clergy can

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

38. In reality, the Church primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah. Rather than notifying law enforcement or other government authorities when Bishops and other Church clergy members call the Helpline regarding sexual abuse within the Church, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

39. Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

40. In another sexual abuse-related civil lawsuit against the Church and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[6]

41. In other words, the Church implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for Kirton McConkie attorneys to snuff out complaints and protect the Church and its wards from

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

[6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

42. Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as a "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allowed Thomas Justin Powell to continue completely unhindered and protected, even in his predatory conduct. Defendants, their agents, and employees, including bishops, counselors, or personnel mentioned herein, DOES 4- 100, and each of them, acted to protect the heinous and unforgivable acts of Thomas Justin Powell, and in such action taken against Plaintiff's innocence and vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

43. At all times herein mentioned, Defendants and each of them (1) knew how conducive the Church premises and other locations allowing for direct, unsupervised access to youth members were to sexual abuse and sexual predators, and that sexual predators, such as Thomas Justin Powell in particular, had apparent, if not actual, authority within the Church community, on Church premises, and at the aforementioned unsupervised locations, while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker), or otherwise as adult members in general; (2) knew that members of the Church priesthood or their adult children, specifically, Thomas Justin Powell, systematically and continuously leveraged any and all authority which the title and association with the Church, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew that leaving Plaintiff or any youth members

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

of the Church under the supervision of Thomas Justin Powell or within his presence and otherwise unattended, presented a risk of imminent harm to those youth members and did harm at least one of them, this Plaintiff.

44. Defendants provided direct access to a large youth community wherein a danger to the community, Thomas Justin Powell, wielded power over the Plaintiff.

45. Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that Thomas Justin Powell was isolating and taking minor children, including Plaintiff, and committing inappropriate behavior with minor children. Therefore, Defendants knew or should have suspected that Thomas Justin Powell was engaging in inappropriate behavior and conduct with minor children, including Plaintiff, at The Church's ward and congregation and failed to take any remedial action prior to his sexual assault of Plaintiff.

46. Prior to, during, and after Thomas Justin Powell's sexual assault and/or sexual abuse, and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that Thomas Justin Powell's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

47. Defendants were made aware, and confirmed that Thomas Justin Powell had inappropriately touched, sexually assaulted and/or sexually abused, and molested Plaintiff.

48. Notwithstanding their confirmed actual knowledge of Thomas Justin Powell's sexual assault and/or sexual abuse, and molestation of Plaintiff, in addition to any other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children

active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by Thomas Justin Powell, limit or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

49. Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Thomas Justin Powell.

50. As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Thomas Justin Powell's unlawful and inappropriate misconduct, Thomas Justin Powell was able to continue his sexual assaults and/or sexual abuse, and molestation of Plaintiff.

51. Defendants acting through their representative, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by Thomas Justin Powell because, inter alia, Defendants:

a) Negligently hired, supervised, retained, monitored, and/or investigated Thomas Justin Powell.

b) Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

c) Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law enforcement.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

52. Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made Thomas Justin Powell's conduct harder to detect including, but not limited to:

a) Permitting Thomas Justin Powell to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Thomas Justin Powell sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

b) Permitting Thomas Justin Powell continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Thomas Justin Powell's misconduct that created a risk of childhood sexual assault.

c) Failing to inform or concealing from law enforcement officials of the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Thomas Justin Powell had, and/or was, engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d) Holding out and affirming Thomas Justin Powell to Plaintiff and Plaintiff's parent, other children and their parents, and to the community as being in good standing and trustworthy.

e) Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

employees, including Thomas Justin Powell with minor children.

f) Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

53. Defendants, and each of them, negligently, intentionally, maliciously and/or willfully refused to, and/or did not act reasonably to stop, inhibit, and/or report Thomas Justin Powell to law enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation of Plaintiff, thereby allowing the assault to occur and to continue unabated.

54. Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

55. Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

56. The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

**<u>FIRST CAUSE OF ACTION</u>**

**NEGLIGENCE**

**(Plaintiff Against All Defendants and DOES 4-100)**

57. Plaintiff re-alleges and incorporates by reference herein each allegation contained

herein above as though fully set forth and brought in this cause of action.

58. Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of Thomas Justin Powell by way of the special relationship existing between those individuals.

59. Defendants knew or should have known of Thomas Justin Powell's misconduct and inappropriate sexual behavior directed by Thomas Justin Powell to minor Plaintiff Jane Roe EO 5.

60. Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff Jane Roe EO 5 or her parents regarding the abuse, despite having a legal duty to do so.

61. As a result of Defendants' negligence, Plaintiff Jane Roe EO 5 was sexually abused by Thomas Justin Powell.

62. Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, she would not have been subjected to the misconduct aimed against her.

63. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**SECOND CAUSE OF ACTION**

**NEGLIGENT SUPERVISION OF A MINOR**

**(Plaintiff Against All Defendants and DOES 4-100)**

64. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

65. Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, Thomas Justin Powell, on Defendants' premises and other locations allowing for direct, unsupervised access to youth members. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; like Thomas Justin Powell, a figure of authority for the Defendants' church community shared with Plaintiff.

66. Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that Thomas Justin Powell was engaged in repeated inappropriate and harassing relationships with Plaintiff and may have exhibited inappropriate conduct around other minors; allowing Plaintiff to spend unsupervised one-on-one time with Thomas Justin Powell; ignoring and turning a blind-eye to Plaintiff's whereabouts and wellbeing, so that she could be with Thomas Justin Powell; and allowing Thomas Justin Powell to repeatedly sexually harass and abuse the minor Plaintiff on the Church premises and in the aforementioned unsupervised locations.

67. Had Defendants adequately and properly supervised, monitored, and protected its students, Plaintiff would not have been harmed.

68. Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

69. Had Defendants, each of them, adequately performed their duty and responsibility,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment she endured, and which still impacts her life today, as alleged herein.

70. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## THIRD CAUSE OF ACTION

## SEXUAL ABUSE OF A MINOR

## (Plaintiff Against All Defendants and DOES 4-100)

71. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

72. While Plaintiff was a member at Defendants' Church, Thomas Justin Powell took advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given her age.

73. Defendants ratified Thomas Justin Powell's sexual abuse of Plaintiff because Defendants had knowledge that he had harassed and potentially harmed Plaintiff, in addition to any other community youth members, yet they intentionally turned a blind-eye and still allowed him to be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing Thomas Justin Powell to gain access to and ultimately manipulate and sexually abuse Plaintiff. Defendants did not discipline, denounce, or discharge Thomas Justin Powell; as such, they instead accepted and thus ratified his conduct.

74. At all times, Defendants, were employees or administrators who were acting within

the course and scope of their employment or agency with The Church of Jesus Christ of Latter-day Saints when they ratified Thomas Justin Powell's criminal conduct and adopted it as if it were their own conduct.

75. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

76. In committing the acts described herein, the conduct of Thomas Justin Powell, Defendants, their agents, and employees, and DOES 4-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, The Church, The Temple Corporation and The Hemet California Stake.

## <u>FOURTH CAUSE OF ACTION</u>

## NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE

**(Plaintiff Against All Defendants and DOES 4-100)**

77. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

78. Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 4-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

79. During the time Plaintiff was being sexually abused by Thomas Justin Powell, Defendants knew of complaints of serious misconduct made against Thomas Justin Powell, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Thomas Justin Powell.

80. Instead, Defendants blamed, threatened, and attacked Plaintiff for compromising Thomas Justin Powell's position in the Church and authority within the Church community. Defendants wholly condoned Powell's illicit relationship with and sexual abuse of Plaintiff. With Plaintiff trapped in this abusive relationship and believing she had no recourse given the position of Powell's parents, Plaintiff directly went to her "Bishop" twice for help. Instead, she was disciplined, and Powell allowed to continue with his abuse. The psychological impact of being blamed and punished by the religious figure responsible for her spiritual well-being and protection is one which continues to affect Plaintiff to this day.

81. Defendants knew or should have known that Thomas Justin Powell engaged in repeated misconduct against female members of the community, one being Plaintiff.

82. Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise Thomas Justin Powell on Defendants' premises.

83. Had Defendants, each of them, properly investigated, supervised, trained, and monitored Thomas Justin Powell's conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed Thomas Justin Powell to continue, unhindered, with his predatory conduct directed towards underage members of the Church community, including Plaintiff.

84. Defendants negligently hired, supervised, retained, monitored, and otherwise

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

employed Thomas Justin Powell and negligently failed to ensure the safety of a minor community member in the Church, Plaintiff, who was entrusted to Defendants' custody, care and control.

85. Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the Thomas Justin Powell.

86. Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their adult members and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon her.

87. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**<u>FIFTH CAUSE OF ACTION</u>**

**NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE**

**(Plaintiff Against All Defendants and DOES 4-100)**

88. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

89. Defendants, their agents and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, and DOES 4-100, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

90. Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn her of known and knowable dangers posed by its faculty and staff, including Thomas Justin Powell; by failing to inform and educate her on its sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train its faculty and staff, including Thomas Justin Powell, on Defendants' sexual harassment policies.

91. As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 4-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by Thomas Justin Powell.

92. Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

93. As a direct and legal result of this negligent conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**SIXTH CAUSE OF ACTION**

**BREACH OF MANDATORY DUTY:**

**FAILURE TO REPORT SUSPECTED CHILD ABUSE**

**(Plaintiff Against All Defendants and DOES 4-100)**

94. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

95. Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

96. Defendants, acting through their employees, had, or should have had a reasonable suspicion that Thomas Justin Powell was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

97. Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

98. By failing to report suspected child abuse, Defendants allowed Thomas Justin Powell to continue, unhindered, in his abuse of minor children, including Plaintiff.

99. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Roe EO 5 prays for judgment against Defendants THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE HEMET CALIFORNIA STAKE, their employees and/or agents, and DOES 4 through 100, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

according to proof;

2. Attorney's fees;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

Dated: September 3, 2024

**SLATER SLATER SCHULMAN LLP**

By: ____________________

Michael W. Carney
Lauren A. Welling
Sarah Kissel Meier
Attorneys for Plaintiff

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573